Good morning, Your Honors. May it please the Court, I'm Charles Nicol appearing for the Petitioner. The issue in this matter is whether Petitioner's two misdemeanor convictions are categorically crimes involving moral turpitude, which would preclude him from establishing eligibility for cancellation of removal for a non-permanent resident under INA Section 240 AB. The Petitioner contends that under this Court's holding in Galeano-Mendoza v. Gonzalez and under the Attorney General's recent decision in Silva-Trevino, that the immigration judge was required to review the events surrounding the convictions to determine whether he'd in fact been convicted of crimes involving moral turpitude. The immigration judge in the present case pre-permitted the applications without any testimony concerning the facts of the case and without a complete record of the convictions. The issue of Petitioner's eligibility for cancellation of removal stems from two misdemeanor criminal convictions, one for petty theft in 1989 and another for possession of stolen property in 1990. The immigration judge believes that these made him inadmissible as crimes necessarily involving moral turpitude and that they also stopped his accumulation of continuous physical presence. Where there's a divisible statute in both the – well, certainly the petty theft is a divisible statute. You have to look at the full range of conduct which is prescribed by the statute and see whether it necessarily involves moral turpitude. If there are sections of the law which do require moral turpitude and others which don't, the court will apply a modified categorical approach to determine whether the conviction qualifies as one involving moral turpitude. If there are sections which do not involve moral turpitude, then the court can look beyond the language of the statute and look at the documents from the proceedings such as the indictment, the judgment, jury instructions, the transcripts of pleadings, the sentencing transcripts. And so the first step is that the judge has to look at the statute. And California Penal Code section 484A with petty theft is a divisible statute. Most of the statute clearly involves conduct which would be considered acts of moral turpitude. However, the last section would cover – it's kind of a strangely worded section. It says one who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person obtains credit and thereby obtains labor or service of another is guilty of theft. And what this would generally be applied to is where a defendant doesn't really have the means – procures labor or services and doesn't really have the means to pay for such services. You know, a defendant may induce others to work in reliance on a statement that he has obtained a loan or has money coming in or a contract. And if those haven't actually been finalized, he's not able to pay. You know, so the defendant – he may actually have an intent to pay, but was unable to do so. Therefore, it could be defendant – the defendant may be guilty under this statute even where there's a lack of that evil intent. And another reason is that for immigration purposes, the context of theft attaches where there's an intent to permanently deprive the owner of his or her property. It's an old case, matter of H, from the Board of Immigration Appeals. It dealt with theft of an automobile and where the facts indicated that the defendant intended to return the car at a later date. I mean, he stole the car, he took it to a city, he was supposedly driving it back to the owner when he ran out of gas and abandoned it by the road. But the BIA held in that, quote, the offense for which the appellant was convicted does not involve an intent to deprive the owner of his property permanently, and for that reason does not involve moral turpitude. You know, the crime of obtaining property through false pretense is committed even though the intent to deprive the owner of properties is only temporary, people versus Brits. Now, Section – the other – we don't have a record of the petty theft offense. We have the, you know, conviction record. But we have – there's very little on record for that. For the receipt of stolen property, it was a car. No one's alleging he stole the car, but he drove the car with knowledge that it had been appropriated without permission. There's a case, people will biograph a California case, which is mentioned in the briefs, where it also dealt with an automobile where some friends had stolen an antique car, brought it over to the defendant's house, and he stored it in the garage. And in that case, the court held that the mere receipt of stolen goods without knowledge – with knowledge that it's been stolen is not in itself a crime if the property was received with an intent to restore it to the owner without reward or any other innocent intent. So the – they said the critical factor is the defendant's intent at the time he receives or initially conceals a stolen property from the owner. So the intent to restore must exist at the moment that the property is accepted if the person's going to be acquitted. So you can be convicted there. I don't know how it helps you to show that it isn't a crime of which you could be convicted if he intended to return it as soon as he took it. Well, yeah, but he might intend to – for example, they could keep that car. And he says, well, I intend to keep it to the owner. I don't intend to – but I intend to use it for a while. I need to run some errands and I need to go shopping and visit some people. But you were talking about intent at the moment you received it. Yeah. It's a different issue if you receive the stolen property, take it for a joyride, and then you return it. Then you're guilty of receipt of the stolen property if you only intend to deprive the owner temporarily. Right. And there's a California Supreme Court case that says that, Jaramillo. Yeah. But in this – I mean, we don't have all the facts of this case. The record we have on this one – Well, but the issue you have is with the receipt of the stolen property. Is that a crime of moral turpitude? And your argument really, as I understand it, is that receipt of stolen property is not categorically a crime of moral turpitude, because you can receive stolen property under California law and have an intent not to deprive the person permanently but to only deprive the person temporarily. Yes. As the California Supreme Court has stated. Right. And if you do deprive the person of the – but, you know, under matter of H, where you're depriving the person of property temporarily, the BIA said, that doesn't reach the level of moral turpitude. It's not a crime of moral turpitude. It doesn't reach the level of a crime – it's wrong. I mean, certainly, you know, it's conduct in which you could be convicted, but it doesn't rise to that level where it's, you know, moral turpitude, as is generally understood, that, you know, shocks the conscience, the public conscience as being inherently vile, based, depraved, contrary to the rules and morality. You have just over a minute left. Are you going to rebuttal? I'll reserve for rebuttal. Thank you. May it please the Court. My name is Colette Winston, and I represent Attorney General Eric Holder, the Respondent. The question presented in this case is whether Mr. Castillo's convictions are crimes involving moral turpitude, CIMTs, such that the stop-time rule would apply to the 10 years of continuous physical presence that is required for cancellation of removal under INA Section 240A. The answer to that is, yes, they are both CIMTs. The first crime, the 1989 crime, petty theft, has already been ruled by this Court on at least two occasions to be CIMTs. Fairly recently, Flores-Juarez v. Mukasey, 2008, and prior to that, U.S. v. Esparza-Ponce in 1999. The statute itself of the other crime, the crime of moral turpitude. Do we have any authority directly on point with respect to that? As to the second crime, the 1990 crime? Yes. Patel, P-A-T-E-L, a 1976 case, found at 542 F. 2nd, 796. So both convictions in this case, the 1989 conviction and the 1990 conviction, have already been determined to be CIMTs. And it stands to reason because the 1989 conviction, even if the statute is divisible, fraud permeates the entire statute. In fact, fraud or felonious appears seven times. Do you agree that if it is not with intent to deprive the property owner permanently of the property, but only temporarily of the property, that it is not a crime of moral turpitude? I would disagree with that, Your Honor. I believe that this permanent versus temporary is really drawing a line in the sand, that there isn't a distinction between whether it was a permanent taking or a temporary taking. Are we talking about the original theft or are we talking about the receipt? This argument was made by Petitioner as to both crimes, the petty theft and the receipt. No, no, no. I'm talking about the crime of receipt. The crime of the second crime? Yeah. When we say permanent deprivation, are we referring to the stolen, the person who steals it? I believe that whether it was permanent or temporary, there's still a stealing. There's still a receipt of stolen property. Okay. So whether one receives merchandise from a store that one knows is stolen, wears the merchandise for a couple of weeks and returns it to the store, that is just as much a crime involving moral turpitude as if someone immediately returns it to the store. What about the wonderful standard example of the joyride scenario? Except we'll take it in two stages because we're talking about receipt. I take possession of an automobile that's not mine because I want to spend half an hour out at Golden Gate Park and I'm not planning to keep the vehicle. And so I bring it back to wherever I got it and there's a friend who says, gosh, that's a nice car you've got. And I say, you want it for a few minutes? Go ahead, take it. Bring it back, though, because the owner lives here. Has the second driver done something fraudulent in that scenario? Was that really a crime involving moral turpitude? I would say yes, because it still falls under every person who receives any property that has been stolen. So it can be stolen, it can be stolen even if it was, even if it had been taken without the intent to permanently deprive. Yes. I think that a teenager who shoplifts jewelry from a jewelry store intending to return it a week later has just the very same scienter or intent to deprive the owner of the property as anyone else. Yes, that's true. It can be convicted of a crime. That's not the same as saying it's a crime of moral turpitude. And there are a number of BIA decisions which apparently disagree with you in which the BIA says that offenses like joyriding are not morally turpitudinous because it doesn't involve intent to deprive the owner of the car permanently. You've got matter of P, matter of H, matter of G. I don't think we've got the whole alphabet. But the BIA has said it on a fair number of occasions. Well, but this particular statute, California Penal Code 496, has been ruled by this court in Patel to be a crime involving moral turpitude. Yes. And then the California Supreme Court that same year explained that part of it is and part of it isn't. They were both in 1976. Doesn't that predate our whole Taylor structure of analysis of whether a crime is a crime of moral turpitude under this statutory regime? Yes, it does. And the Patel case is a 1990 case. And matter of silver trivia, Patel is 1976 also. I'm sorry? I think Patel is 1976. Maybe I'm wrong. Yes. See, Patel is ñ I'm sorry, you're right, 1976. I'm sorry. I was looking at another case. But silver trivino was 2008. And that talked about the categorical approach and modified categorical approach and the idea of scienter. So ñ But it doesn't reverse the view of joyriding and the other temporary positions of the BIA itself has said is not morally turpitudinous or whatever. CIMT, as we like to call it. Right. It doesn't reverse that. It doesn't reverse that precedent. But we believe that, you know, this section talks about every person who buys or receives any property that has been stolen. And, yes, just because it's a crime doesn't mean it's a CIMT. But certainly it's a crime that involves scienter and that involves the idea of ñ Nobody's challenging the fact that it's a crime. He's not challenging his conviction. He says not every crime is a crime of moral turpitude. And certainly ñ I would agree with that. Well, I'm not sure everybody would. Not every crime is a crime involving a crime of moral turpitude. We're getting there. But this crime is. Well, that's the question. The crime of receipt of stolen property is if you intend to deprive the owner of it permanently. It's like the theft. It's the same kind. But if you only intend to use it for a jury ride and return it, then, according to at least some BIA decisions, it's not an intent to deprive the person permanently but to return it. And that's not as morally offensive as keeping it permanently. I mean, there's a nice fine distinction about what's a crime of moral turpitude and what isn't. But there has been a general view that temporary deprivation of property is not as horrendous as a permanent deprivation of property. Perhaps not as horrendous, but still. Or as morally offensive. I believe it's still just as morally offensive. Well, that's your personal view. Ms. Winston. Well, that's Patel's view as well in the Ninth Circuit. Ms. Winston, we've been having an interesting semantic discussion. But underlying it is a rather significant question, which is whether the government really has an important national policy to effectuate by deporting joyriders or those who are auxiliary, the second receivers of joyriding. Don't we really have to look at the actual offense committed or get some sense beyond the mere fact that there was a conviction to know whether it's in the joyriding category or not? I think the court would look at the actual offense committed if the court gets beyond the categorical approach and reaches the modified categorical approach. Well, that's what Judge Pollack's asking. That's the question. Shouldn't we get beyond the categorical approach and in this case reach the modified categorical approach? Well, I believe that the statute is not divisible and it is clear on the statute's face that this is a crime involving moral turpitude. But if Your Honors disagree with that, then, yes, you would have to go to the modified categorical approach. And I do also believe there aren't too many documents of conviction in the record to really show us what happened here. It involved a car. It involved a Buick. But we don't really have a lot of details and we don't have a lot of the documents. So are you suggesting there's no point in remanding it, that we ought to just, if you can't show it with a categorical approach, you won't be able to show it at all? Well, I think in a sense there's no point in remanding it because there's an alternative argument here which was not specifically addressed by the immigration judge. It has to be remanded to that anyway, right? Well, it seems to be almost harmless error of the immigration judge that he did not address 240a)(b)(1)(C), which is whether there's a crime involving moral turpitude under, I think it's 212. Okay. So if he didn't address it, then we would have to return it to him so that he could address it. It seems so clear that there is such a condition. Well, you know, I like your argument. We find lots of things that are clear to us and the Supreme Court says, well, you've got to give the BIA the first chance. Right. Under INS v. Ventura and the Thomas case, yes, the first chance or the first crack at it would be to remand it back to the BIA to see if the other sections of cancellation of removal would apply, such as Section C and Section D, the hardship section. Okay. Thank you. That wouldn't be something the Court really could address without remanding it. But we feel that at least as to one section, it's pretty clear. Okay. Thank you. Thank you. Well, I would certainly agree that convictions under 484 and 496 are often crimes involving moral turpitude, but not always. If we're dealing with a divisible statute, and which we are in this case, then we have to go to the Supreme Court. I think we can't take the modified categorical approach and determine if there's you know, look at what happened. We don't, and it's true, we don't have much of a record here. We know that there was a 1979 Buick, and he was, he didn't steal it, but he was driving it. The BIA didn't consider the modified categorical approach. The BIA simply gave a, agreed without any review, it just agreed with the immigration judge. And the immigration judge, the only thing he, testimony he took was on the issue of voluntary departure. Found that he was good moral character. So what do you want us to do? I think it needs to be remanded back to the immigration judge for a modified categorical approach. Okay. That's fine. Alright. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Reinhardt, Pollak